UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                          Plaintiff,

v.                                                    Criminal Action No. 3:23-cr-80-DJH

NEAL SCOTT STONE (1) and
KEELY LOGSDON (2),                                              Defendants.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendants Neal Scott Stone and Keely Logsdon are charged with various drug-trafficking offenses.  (Docket No. 70; *see also* D.N. 148)  This matter is set for trial on July 28, 2025.  (D.N. 118)  Stone now moves to exclude certain drug exhibits (D.N. 120), statements by Logsdon (D.N. 124), and references to "prison."[1]  (D.N. 134)  He also moves for the Court to "order the government to provide an objective, on-the-record explanation, during a scheduled hearing, rebutting the presumption of vindictiveness in this case."  (D.N. 125, PageID.1308)  The government opposes the motions and moves to exclude evidence or argument inviting jury nullification (D.N. 131) and evidence of the defendants' potential penalties.  (D.N. 132)  The defendants did not respond to the government's motions.  After careful consideration, the Court will deny Stone's motions, deny the government's motion regarding jury nullification, and grant the government's motion regarding the defendants' potential penalties.

---

[1] Logsdon subsequently moved to adopt the motion to exclude the drug exhibits.  (D.N. 122)  The United States did not oppose Logsdon's motion.  The Court will therefore grant Logsdon's motion to adopt.  *See United States v. Horton*, No. 3:22-cr-37-RGJ, 2024 U.S. Dist. LEXIS 126810, at *2 n.1 (W.D. Ky. July 18, 2024).

1

## I.

Federal district courts have broad authority in ruling on the admissibility of evidence under their "inherent authority to manage trials." *Middleton v. SelecTrucks of Am.*, LLC, 589 F. Supp. 3d 687, 691 (W.D. Ky. 2022) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)); *see also United States v. Kniffley*, 729 F. App'x 406, 414 (6th Cir. 2018) ("[T]he district court is granted broad discretion in making evidentiary rulings."). Generally, "[c]ourts will exclude evidence on a motion in limine only when the challenged evidence is clearly inadmissible." *Brown v. TG Auto. Sealing Kentucky, LLC*, No. 5:22-CV-00026-GNS-LLK, 2024 WL 3656218, at *1 (W.D. Ky. Aug. 2, 2024) (quoting *Lotz v. Steak N Shake, Inc.*, No. 5:19-277-DCR, 2021 U.S. Dist. LEXIS 104356, 2021 WL 2270353, at *1 (E.D. Ky. June 3, 2021)). Otherwise, the "'better practice' is to defer evidentiary rulings until trial, so that 'questions of foundation, relevancy[,] and potential prejudice may be resolved in proper context.'" *United States v. Stone*, 543 F. Supp. 3d 535, 539 (W.D. Ky. 2021) (citations omitted). Rulings on motions in limine are "no more than . . . preliminary, or advisory, opinion[s]" within the Court's discretion, which may be revisited "at any time and 'for whatever reason [the Court] deems appropriate.'" *Id.* (quoting *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994)).

### A.    Defendants' Motions

#### 1.    Drug Exhibits

The defendants first move to exclude certain drug exhibits, arguing that lab reports demonstrate that the substances were tampered with or misidentified before arriving at the laboratory. (D.N. 120)  The defendants contend that according to the reports, law enforcement sent "knotted" plastic bags with "chunky white powder" to the laboratory, but that when the exhibits reached the laboratory, "all of the 'plastic bags' were unknotted" and some contained

"powder," while others contained "white powder," and none contained "chunky white powder." (D.N. 120, PageID.1124)  Based on this purported discrepancy, the defendants conclude that the exhibits "were clearly tampered with after they were turned over to law enforcement."  (*Id.*)  The government, on the other hand, argues that witnesses will testify at trial that "the exhibits were in the same condition when received by the laboratory for analysis as they were when they were submitted by the FBI."  (D.N. 121, PageID.1285)

Chain-of-custody issues "typically go to the weight of [the] evidence rather than its admissibility."  *United States v. Williams*, 640 F. App'x 492, 496 (6th Cir. 2016) (citing *United States v. Allen*, 619 F.3d 518, 525 (6th Cir. 2010)).  For this reason, "physical evidence is admissible so long as 'the possibilities of misidentification or alteration are eliminated, not absolutely, but as a matter of reasonable probability.'"  *Id.* (quoting *Allen*, 106 F.3d at 700).  "Merely raising the possibility of tampering or misidentification is insufficient to render evidence inadmissible."  *United States v. Combs*, 369 F.3d 925, 938 (6th Cir. 2004).  "Where there is no evidence indicating that tampering with the exhibits occurred, courts presume public officers have discharged their duties properly."  *Allen*, 619 F.3d at 525.

The Sixth Circuit considered a chain-of-custody issue in *Allen*.  There, the defendant argued that a bag of crack cocaine should be excluded because "the original evidence bag was destroyed and replaced with a DEA evidence bag," and "the weight of the crack cocaine diminished."  619 F.3d at 525.  But the court rejected this argument, finding that the defendant "present[ed] no actual evidence that tampering occurred" and at most "merely raise[d] the possibility of tampering."  *Id.*  The court explained that "it d[id] not appear that there was anything improper about [the] replacement of the original evidence bag," and the government "provided several explanations" for the weight discrepancy.  *Id.*; *see also United States v. Allen*, 106 F.3d

3

695, 700 (6th Cir. 1997) (finding that a chain-of-custody objection was properly overruled where the defendant "merely raise[d] the possibility that someone tampered with the evidence" because "he point[ed] to no evidence showing that alteration actually occurred").

Here, while the Case Details Report indicates that the evidence received was not consistent with the description of the evidence (D.N. 120-2, PageID.1131), the defendants have not presented any evidence of actual wrongdoing, tampering, or misidentification. (*See generally* D.N. 120)  At this point, the defendants have "merely raise[d] the possibility of tampering" or misidentification. *Allen*, 619 F.3d at 525.  Their challenge to the chain of custody thus "goes to the weight of the evidence, not its admissibility." *United States v. Sutton*, No. 4:20CR-00022-JHM, 2021 U.S. Dist. LEXIS 107240, at *6 (W.D. Ky. June 7, 2021); *see also Williams*, 640 F. App'x at 496; *Allen*, 619 F.3d at 525; *United States v. Conway*, No. 17-43-DLB-CJS, 2018 U.S. Dist. LEXIS 192922, at *7 (E.D. Ky. Nov. 12, 2018) ("[W]hen a criminal defendant makes an allegation of mishandled evidence, witness testimony can 'establish[] a clear chain of custody that eliminate[s] any reasonable probability of misidentification or alteration.'" (quoting *United States v. Thompson*, 96 F. App'x 355, 356 (6th Cir. 2004)).  These issues are properly "reserved for cross-examination and argument." *Sutton*, 2021 U.S. Dist. LEXIS 107240, at *6.

### 2.    Coconspirator Statements

Next, Stone moves to exclude statements that Logsdon allegedly made about him to a confidential source as inadmissible hearsay.  (D.N. 124)  Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  But Rule 801(d)(2)(E) provides  that a statement is "not hearsay" if it is "offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."

> There are three foundational prerequisites which must be established to admit a coconspirator's statements under Rule 801(d)(2)(E): [1] that a conspiracy existed;

> [2] that [the] defendant was a member of the conspiracy; and [3] that the declarant's statement was made during the course and in furtherance of the conspiracy. These preliminary matters are findings of fact to be made by the district court pursuant to Fed. R. Evid. 104(a). They must be established by a preponderance of the evidence, and [they] are reviewed only for clear error.

*United States v. Conrad*, 507 F.3d 424, 429 (6th Cir. 2007) (quoting *United States v. Maliszewski*, 161 F.3d 992, 1007 (6th Cir. 1998)). "Although the hearsay itself may be used to determine whether the defendant was involved in the conspiracy, 'absent *some* independent, corroborating evidence of [the] defendant's knowledge of and participation in the conspiracy, the out-of-court statements remain inadmissible.'" *United States v. Fusse*, 122 F. App'x 243, 247 (6th Cir. 2005) (quoting *United States v. Clark*, 18 F.3d 1337, 1341 (6th Cir. 1994)). Sufficient "independent evidence is not merely a scintilla, but rather enough to rebut the presumed unreliability of hearsay." *Conrad*, 507 F.3d at 429 (quoting *Clark*, 18 F.3d at 1341). Courts may "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." *United States v. Young*, 847 F.3d 328, 352 (6th Cir. 2017) (quoting *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979)). This is the preferred approach among the Sixth Circuit. *See United States v. Maike*, 613 F. Supp. 3d 991, 1004 (W.D. Ky. 2020); *United States v. Tomes*, No. 3:16-CR-00113-TBR, 2018 U.S. Dist. LEXIS 13872, at *18 (W.D. Ky. Jan. 29, 2018); *United States v. Coffman*, No. 09-CR-181-KKC, 2010 U.S. Dist. LEXIS 104153, at *7 (E.D. Ky. Sep. 29, 2010); *United States v. Burns*, No. 1:21-cr-00014-5, 2023 U.S. Dist. LEXIS 241563, at *6 (M.D. Tenn. Apr. 14, 2023); *United States v. Bell*, No. 17-20183, 2022 U.S. Dist. LEXIS 62060, at *6 (E.D. Mich. Apr. 1, 2022).

According to Stone, there are several statements where Logsdon "talked about how she was dating . . . Stone and that he was truck driver"; "had taken a trip with . . . Stone to Phoenix, Arizona," "met with a Mexican that . . . Stone had met while in federal prison[,] and picked up

5

cocaine"; and how her "man . . . goes out west and picks up forty to fifty bricks at a time" and "deals with the Sinaloa Cartel." (D.N. 124, PageID.1292–93) But Stone contends that "the record does not establish that Logsdon and Stone were members of the same conspiracy" at the time the statements were made. (*Id.*, PageID.1294) In particular, Stone argues that absent additional evidence of conspiracy, he and Logsdon "cannot be transformed into . . . coconspirator[s] merely because [Logsdon traveled to a cocaine-acquisition location with Stone, met a Mexican, and then picked up an unspecified amount of cocaine]." (*Id.* (alterations and omission in original) (quoting *United States v. Williamson*, 53 F.3d 1500, 1518–19 (10th Cir. 1995)))[2] Stone further argues that "the record does not establish 'when' Logsdon made the alleged statements to CS3," and therefore "one cannot determine if the statements were made before the alleged conspiracy began, or while it existed." (*Id.*, PageID.1295) And finally, Stone contends that Logsdon's statements do not "suggest[] that Logsdon made [them] to further an objective of the conspiracy" because the statements were simply "idle chatter." (*Id.*, PageID.1297–98)

In response, the government states that it intends to present independent, non-hearsay evidence of Stone's involvement in the conspiracy. (D.N. 139) Specifically, it intends to introduce evidence of Logsdon's statements to other confidential sources, which corroborate each other, and "location data for Stone's cell phone and the Ke[nw]orth truck." (*Id.*, PageID.1479) It also intends to introduce evidence of Stone's participation in the controlled buys by dropping off or picking up Logsdon from the buys and Logsdon's discussion of prices, distribution strategies, quantities of

---

[2] In *Williamson*, the Tenth Circuit held that the defendant could not "be transformed into a coconspirator merely because he bought drugs from a known member of a drug conspiracy" because "'[m]ere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy.'" 53 F.3d at 1518 (quoting *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990)). Here, however, evidence of Logsdon's involvement goes well beyond "mere association." *Cf. id.*

drugs, and discounts. (*Id.*) According to the government, Logsdon's statements were made in furtherance of the conspiracy because she made the statements "to a potential and recurring drug customer," and she "discuss[ed] the source of supply of Logsdon's drugs, the source of supply of Stone's drugs (the 'Mexican' and the Sinaloa Cartel)[,] and identif[ied] her co-conspirator (Stone)." (*Id.*, PageID.1481–82)

Based on the government's representations, the Court concludes that Stone's motion "is premature at this time, as the admissibility of the statements is dependent upon the government's proof of the above [elements]." *United States v. Rodriguez*, No. 3:18-cr-46-RGJ, 2022 U.S. Dist. LEXIS 144350, at *47 (W.D. Ky. Aug. 12, 2022). In accordance with the Sixth Circuit's preferred approach, *see Maike*, 613 F. Supp. 3d at 1004; *Burns*, 2023 U.S. Dist. LEXIS 241563, at *5, the Court will admit the statements, "subject to [the] defendant's continuing objection and that the prosecution will be required to show by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the statements are hearsay was a participant[,] and that the statement[s] w[ere] made in the course and in furtherance thereof." *Vinson*, 606 F.2d at 15; *see also Rodriguez*, 2022 U.S. Dist. LEXIS 144350, at *47. The Court will rule on Stone's hearsay objection at the conclusion of the government's case-in-chief.[3] *Vinson*, 606 F.2d at 15.

---

[3] In this motion, Stone quotes a handwritten letter, purportedly from Logsdon, that "suggests that Logsdon was merely bragging and boasting when she made the statements—not intentionally trying to further a conspiratorial objective." (D.N. 124, PageID.1298 n.7) But Stone attached only one page of the letter, and the letter itself does not indicate who it is from or when it is written. (D.N. 124-3) In response, the government filed a motion to produce "a full copy of the letter Stone attached to his Motion in Limine to Exclude Statements." (D.N. 141) Because the Court will deny the motion to which the letter was attached, the Court will deny the government's motion to produce as moot.

### 3.    References to "Prison"

Finally, Stone moves to "exclude any reference to 'prison' in testimony from any witnesses in the trial of this matter." (D.N. 134, PageID.1444)  In a single-paragraph motion, without citation to authority, Stone contends that discovery materials in the case contain "multiple references to conversations or interactions that were said to have occurred in prison"  and that these conversations or interactions are inadmissible as irrelevant and unfairly prejudicial under Federal Rules of Evidence 402 and 403.  (*Id.*)  But the government responds that "[t]he evidence regarding Stone's prior time in prison is very probative of [the] drug conspiracy alleged against Stone" because it "shows that Stone met his source of supply for the drugs . . . in prison" and that "this person . . . facilitated [his] connection to members of the Sinaloa Cartel."  (D.N. 140)

Stone's bare-bones motion provides insufficient argument as to why references to prison are irrelevant or why he would be prejudiced by their admission.  (*See generally* D.N. 134)  As noted above, the Court should "defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds."  *United States v. Hankison*, No. 3:22-cr-84-RGJ, 2024 U.S. Dist. LEXIS 185334, at *3 (W.D. Ky. Oct. 10, 2024) (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)).  Because Stone has not demonstrated that references to prison are "clearly inadmissible on all potential grounds," the Court will defer a final ruling on this issue until trial.  *Id.*

### 4.    Prosecutorial Vindictiveness

Stone next moves the Court to "order the government to provide an objective, on-the-record explanation, during a scheduled hearing, rebutting the presumption of vindictiveness in this case."  (D.N. 125, PageID.1308)  Stone contends that the second superseding indictment was presumptively vindictive because "the government sought and obtained a [s]econd [s]uperseding

[i]ndictment" only a few days after Stone filed his reply in support of his motion to suppress, but the government had known the facts underlying the new charges for "at least a year." (*Id.*, PageID.1309) He argues that the prosecutor had a "considerable stake in deterring Stone's pretrial motions" because the GPS data that he sought to exclude "led to the alleged seizure of cocaine, fentanyl, and currency" and "tied Stone to the cocaine and fentanyl offenses." (*Id.*, PageID.1311) The government does not dispute that it could have included the additional charges in the initial indictment. (*See generally* D.N. 135) Instead, it argues that "a significant showing is required to support a finding of presumptive vindictiveness" and that Stone has not done so here. (*Id.*, PageID.1448)

While "[p]rosecutors have broad discretion in charging decisions, . . . they cannot use that power to punish defendants for exercising their constitutional and statutory rights." *United States v. Brown*, No. 24-5199, 2025 U.S. App. LEXIS 15110, at *6 (6th Cir. June 17, 2025). A defendant can challenge a charging decision as vindictive by showing actual or presumptive vindictiveness. *Id.* Where, as here, the defendant attempts to show presumptive vindictiveness, the defendant must demonstrate an objective, "'realistic likelihood' that a charge was vindictive." *Id.* (quoting *United States v. Goodwin*, 457 U.S. 368, 384 (1982)). "If the defendant makes this showing, he is entitled to a presumption of vindictiveness," *id.*, which the government can rebut "with 'objective, on-the-record explanations' such as 'governmental discovery of previously unknown evidence' or 'previous legal impossibility.'" *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023) (quoting *United States v. Ladeau*, 734 F.3d 561, 566 (6th Cir. 2013)).

"To assess [the] likelihood [of vindictiveness], a court 'must weigh two factors: (1) the prosecutor's "stake" in preventing assertion of the protected right and (2) the reasonableness of the prosecutor's actions.'" *Id.* (quoting *United States v. Poole*, 407 F.3d 767, 776 (6th Cir. 2005)).

First, as to the prosecutorial-stake factor, prosecutors are generally not "deemed to have sufficient prosecutorial stake in deterring pretrial motions" because such motions are typically expected and not unduly burdensome. *United States v. Nasr*, No. 7:18-CR-7-KKC, 2020 U.S. Dist. LEXIS 8521, at *5 (E.D. Ky. Jan. 17, 2020); *see also Ladeau*, 734 F.3d at 567 ("*Goodwin* generally counsels against a finding that a sufficient prosecutorial stake has arisen in the pretrial context."); *United States v. Cater*, No. 3:18-cr-46-RGJ, 2022 U.S. Dist. LEXIS 225088, at *5 (W.D. Ky. Dec. 13, 2022) (noting that presumptive vindictiveness "rarely applies to a prosecutor's pretrial decisions"). But where the government adds "more serious charges without new evidence after the defendant presented a suppression motion," courts have found a prosecutorial stake if the defendant's motion "gravely threatened the prosecution's case." *Brown*, 2025 U.S. App. LEXIS 15110, at *8 (citing *Ladeau*, 734 F.3d at 569–70; *Zakhari*, 85 F.4th at 381–82). For instance, in *Ladeau*, the Sixth Circuit found a prosecutorial stake because the prosecution "was saddled with the prospect of restarting [the defendant's] prosecution from scratch." 734 F.3d at 569–70. And in *Zakhari*, the Sixth Circuit similarly found a "sufficient stake in deterring [the defendant's] pretrial motions" because at stake was the defendant's confession, which "is like no other evidence." 85 F.4th at 382.

Here, the Court granted Stone's motion to suppress in March 2025, excluding evidence derived from the GPS tracker on a Ford Explorer allegedly used by Stone. (D.N. 115, PageID.1107–08) While the Court's ruling on the motion to suppress thus excluded some significant evidence, Stone has not shown that his motion "gravely threatened the prosecution's case." *Brown*, 2025 U.S. App. LEXIS 15110, at *6. The motion was a minimally burdensome and routine pretrial filing. *Ladeau*, 734 F.3d at 568. And the prosecution was not faced "with the prospect of restarting" Stone's case—the case has continued and is proceeding to trial. *Id.* at 569–

70.  Nor was the evidence at stake something as crucial as a defendant's confession, which is "extremely probative of guilt," *United States v. Grogan*, 133 F.4th 553, 565 (6th Cir. 2025) (quoting *United States v. Wolf*, 879 F.2d 1320, 1324 (6th Cir. 1989)), and "is like no other evidence." *Zakhari*, 85 F.4th at 382; *see also Brown*, 2025 U.S. App. LEXIS 15110, at *9; *Cotton v. Hughes*, No. 22-cv-10037, 2025 U.S. Dist. LEXIS 20976, at *68 (E.D. Mich. Feb. 5, 2025) ("The Sixth Circuit has set forth that a confession is uniquely powerful evidence.").  Indeed, as the government points out, "evidence of [the] controlled purchases of fentanyl and cocaine from Logsdon . . . remain[ed] intact" following the Court's ruling.  (D.N. 135, PageID.1450)  Moreover, unlike *Ladeau*, where the government returned a superseding indictment after the defendant's successful suppression motion, 734 F.3d at 564, here the government returned the second superseding indictment nine months before the Court's Order (D.N. 70; D.N. 115) granting the motion to suppress.  *See Cater*, 2022 U.S. Dist. LEXIS 225088, at *9 (distinguishing *Ladeau* because the superseding indictment was returned four months before the Court's order).

In any event, even if Stone could show that the prosecutor had a stake in deterring Stone's pretrial motions, he has not shown that the prosecutor's conduct was unreasonable.  In considering reasonableness, courts often consider whether the additional charges increased the defendant's "sentencing exposure." *Brown*, 2025 U.S. App. LEXIS 15110, at *10.  Stone does not dispute that the second superseding indictment did not affect his statutory mandatory minimum or maximum sentence.[4]  (*See* D.N. 27; D.N. 70; D.N. 125; D.N. 135, PageID.1451)  Instead, Stone relies solely

---

[4] The government also argues that the new charges would not affect Stone's "guideline sentence or calculation.  (D.N. 135, PageID.1451)  But "[s]entencing guidelines are not binding on the Court, while the statutory minimums and maximums are." *Carter*, 2022 U.S. Dist. LEXIS 225088, at *9.  Because the changes in the second superseding indictment do "not result in a necessarily more severe charge" and were the result of failed plea negotiations, the government's conduct was reasonable. *See id.*

on the timing of the superseding indictment and that there was no "newly discovered evidence" in arguing that the prosecutor's conduct was unreasonable. (D.N. 125, PageID.1312–13 ("[T]he facts here indicate that the eight counts of distribution would not have been brought if Stone's Motions were never filed.").  But the government explained that the new charges "were a result of failed plea negotiations." (D.N. 135, PageID.1452)  This is consistent with the emails Stone provided, in which the government made a plea offer and stated that it "intend[ed] to seek a Second Superseding Indictment the week of June 17th." (D.N. 125-5, PageID.1392)  Such conduct is reasonable because "the prosecution may legitimately threaten to bring harsher charges in order to induce a defendant into pleading guilty." *Zakhari*, 85 F.4th 367, 381 n.4 (quoting *Ladeau*, 734 F.3d at 569).  In sum, Stone has failed to meet his burden of showing an objective, "'realistic likelihood' that a charge was vindictive." *Brown*, 2025 U.S. App. LEXIS 15110, at *6 (quoting *Goodwin*, 457 U.S. at 384).  The Court will therefore deny Stone's motion to order the government to provide an "objective, on-the-record explanation" for its charging decision.[5]  *See id.*

**B.    Government's Motions in Limine**

**1.    Jury Nullification**

The government "requests that the defendants be precluded from employing a defense strategy, questioning witnesses, or making arguments that encourage or promote, either explicitly or implicitly, jury nullification, at trial." (D.N. 131, PageID.1434)  The government lists "statements that the defendant would not have been charged if he was 'the mayor's son,' evidence or arguments about the defendant's childhood or family background, and matters of race or

---

[5] Logsdon also moved for leave to file a pretrial memorandum (D.N. 137), which the Court will grant below.

ethnicity" as statements that would "amount to jury nullification" and "should have no bearing on the Jury's deliberations."  (*Id.*, PageID.1434–35)

"A defendant may not offer evidence and testimony for the sole purpose of inviting jury nullification." *United States v. Asai*, No. 3:16-cr-00149-01-RGJ, 2018 U.S. Dist. LEXIS 189664, at *14 (W.D. Ky. Nov. 6, 2018).  But the defendants have not stated that they intend to introduce such evidence.  And the government does not explain, for instance, how the defendants' childhoods or family backgrounds could never be relevant to this case other than to invite jury nullification. (*See generally* D.N. 131)  The Court will therefore defer ruling until trial so that the relevance of any such evidence and potential prejudice to the government "may be resolved in [the] proper context." *Stone*, 543 F. Supp. 3d at 539.

### 2.      Defendants' Potential Penalties

The government also "requests that the defendants be precluded from introducing evidence or commenting in any way about the potential penalty [they] would face upon conviction."  (D.N. 132, PageID.1437)  "Courts have long held that the question of punishment should never be considered by a jury in a criminal case." *United States v. Williamson*, No. 3:21-cr-00123-RGJ, 2022 U.S. Dist. LEXIS 199449, at *6-7 (W.D. Ky. Nov. 2, 2022) (quoting *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991)).  Indeed, it is well established "that it is the exclusive function of juries to determine whether defendants are guilty or not guilty, and of the Court to determine matters of punishment." *Id.* (quoting *United States v. Davidson*, 367 F.2d 60, 63 (6th Cir. 1966)).  Accordingly, the Court will grant the government's motion in limine to preclude evidence of the defendants' potential penalties.  *See id.*

## II.

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Logsdon's motion to adopt (D.N. 122) is **GRANTED**.

(2)    Stone's motion to exclude evidence of the plastic bags (D.N. 120) is **DENIED** without prejudice.

(3)    Stone's motion to exclude Logsdon's statements (D.N. 124) is **DENIED** without prejudice.

(4)    Stone's motion to exclude references to "prison" (D.N. 134) is **DENIED** without prejudice.

(5)    Stone's motion for a hearing (D.N. 125) is **DENIED**.

(6)    The government's motion to preclude jury nullification (D.N. 131) is **DENIED** without prejudice.

(7)    The government's motion to exclude evidence of the defendants' potential penalties (D.N. 132) is **GRANTED**.

(8)    The government's motion to produce (D.N. 141) is **DENIED** as moot.

(9)    Logsdon's motion for leave to file a pretrial memorandum (D.N. 137) is **GRANTED**.

July 21, 2025

**David J. Hale, Judge**
**United States District Court**

14